AO 106 (Rev. 06/09)    Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| THE PREMISES LOCATED AT:  **8450 Gast Place** ) | Case No. 4:21 MJ 5151 NAB |
| **Apartment #288, ST. LOUIS, MO 63147 ("Target** ) | |
| **Location 3"),** further described in Attachment A. ) | SIGNED AND SUBMITTED TO THE COURT |
| ) | FOR FILING BY RELIABLE ELECTRONIC MEANS |

> **FILED**
>
> MAY 14 2021
>
> U.S. DISTRICT COURT
> EASTERN DISTRICT OF MO
> ST. LOUIS

### APPLICATION FOR A SEARCH WARRANT

I,   Christopher Douglas   , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

THE PREMISES LOCATED AT: **8450 Gast Place Apartment #288, ST. LOUIS, MO 63147**
**("Target Location 3"),** further described in Attachment A.

located in the _____ EASTERN _____ District of _____ MISSOURI _____, there is now concealed

see ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
✓ evidence of a crime;
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 841(a)(1), 846 | Conspiracy to possess with intent to distribute controlled |
| Title 18, U.S.C., §§ 924(c) | substance(s); firearms violations |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓    Continued on the attached sheet.
❑    Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is
requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
I state under penalty of perjury that the foregoing is true and correct.

_____
*Applicant's signature*

CHRISTOPHER DOUGLAS, Task Force Officer
FBI *Christopher Douglas Detective*
*Printed name and title*

Sworn, to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____ May 14, 2021 _____

_____
*Judge's signature*

City and State: _____ St. Louis, MO _____

Hon. Nannette A. Baker, U.S. Magistrate Judge
*Printed name and title*
AUSA: Geoffrey S. Ogden

**GOV-0000239**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF          )
THE PREMISES LOCATED AT: **8450 Gast**      )          No. 4:21 MJ 5151 NAB
**Place Apartment #288, ST. LOUIS, MO**     )
**63147 ("Target Location 3").**            )
                                        )          FILED UNDER SEAL
                                        )

## AFFIDAVIT FOR SEARCH WARRANT

I, Christopher Douglas, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a warrant to search the premises known as 8450 Gast Place Apartment

#288, St. Louis, MO 63147 (hereinafter the **"Target Location 3"**), a location further described in

Attachment A, for the items described in Attachment B.

2.      I have been employed with the St. Louis County Police Department since June,

2011 and have been in my current assignment as a Detective in the Bureau of Drug Enforcement

for six years. I was deputized as a Task Force Officer with the Federal Bureau of Investigation

Violent Gang Safe Streets Task Force.  In connection with my official duties, I investigate criminal

violations of the Controlled Substances Act.   I have received specialized training in the

enforcement of federal narcotics laws, and I have been involved in all aspects of narcotics

trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as

well as others who have knowledge of the distribution and transportation of controlled substances,

and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c)

analysis of documentary and physical evidence.  I have also received training and participated in

investigations involving the interception of wire communications and other electronic

GOV-0000240

communications.  Finally, I have testified in grand jury proceedings for violations of federal narcotics laws.  Based on my training and experience as a Detective and Task Force Officer, I am familiar with the ways in which narcotics dealers conduct their drug-related business, including, but not limited to, their methods of importing and distributing narcotics; their use of telephones, and their use of numerical codes and code words to identify themselves, the nature of the communication and/or to conduct their transactions; and their concealment of drug proceeds in real and personal property as well as legitimate businesses.

3.      I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

4.      I have, through training and experience, become familiar with and utilized all normal methods of investigation including, but not limited to, visual surveillance, interviewing witnesses, the use of search and arrest warrants, the use of confidential sources, the use of pen registers, the utilization of undercover agents and the use of court authorized wiretaps.  I am also familiar with methods of searching locations where narcotics and/or narcotic proceeds may be found.  I have been involved in multiple drug investigations and have been involved in numerous arrests for narcotics related crimes.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

GOV-0000241

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846, as well as Title 18, United States Code, Section 924(c), have been committed by Lemarius LOGAN, an individual known as "JET," and other persons known and unknown.  There is also probable cause to search the location described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED

7.      The location to be searched is: **8450 Gast Place Apartment #288, St. Louis, MO 63147** (hereinafter **"Target Location 3"**), described as a two story multi-family apartment building comprised of red brick, gray siding, white trim, a gray roof, and a green-colored front door.  The numbers "288" are white in color and affixed to a green placard to the right of the front door. This residence is located on the north side of Gast Place Street facing south. This description of the Premises, as well as a photograph, is provided Attachment A.

## PROBABLE CAUSE

8.      This investigation into Lemarius LOGAN, "JET," and their associates encompasses activities from November 2, 2020 to the present.  As part of the on-going investigation into the LOGAN Drug Trafficking Organization (DTO), four controlled purchases of fentanyl have been coordinated using an Undercover Detective (UD) from a subject known as "JET," who is known

3

to be associated with LOGAN and other subjects in the LOGAN DTO.  Additionally, LOGAN has been federally indicted for a number of drug distribution and firearm offenses stemming from this investigation (Cause No. 4:21-CR-00156-MTS-NCC).

9.      Most recently, a UD contacted "JET" on the following dates to arrange the successful purchase of heroin/fentanyl from him: March 9, 2021, March 25, 2021, April 13, 2021, and May 10, 2021. On each occasion, the UD obtained quantities of fentanyl directly from "JET" or a member of his DTO.

**A. March 4, 2021 Premises Search Warrant Execution; LOGAN arrested; DTO continues Operation**

10.      On Thursday, March 4, 2021, Lemarius LOGAN was arrested after the execution of a search warrant at his residence, 10748 Hallwood Drive in St. Louis, MO.   Subject Marcayla JONES was also present during the execution of the search warrant.  Investigators discovered and seized distributable amounts of fentanyl, packaging materials and paraphernalia, multiple firearms, and quantities of U.S. Currency.[1]   Investigators had previously obtained a precision location information ("PLI") warrant for telephone number (618) 402-4851, known to be used by LOGAN

---

[1] An additional premises search warrant was obtained and simultaneously executed on March 4, 2021 at 2150 Aventura Way, St. Louis, MO, which was an additional residence utilized by LOGAN on a regular basis. Additional U.S. Currency and distributable amounts of fentanyl/fentanyl analogues were discovered and seized.

GOV-0000243

to arrange and complete narcotics deals.[2]  The physical cellular telephone associated with (618) 402-4851 was also seized as evidence during the premises search warrant execution.

11.     That same day, March 4, 2021, investigators observed that PLI data placed (618) 402-4851 near Delmar Avenue rather than in evidence at St. Louis FBI Headquarters, as would be expected.  Additional PLI data over the next two days continued to place (618) 402-4851 in the same general area.  Based on the new location data, investigators believed that the telephone number (618) 402-4851 had been ported to a new physical cellular telephone.

12.     Between March 4-5, 2021, investigators obtained jail calls between LOGAN and JONES, who had been identified as a girlfriend of LOGAN.  During the calls, LOGAN instructed JONES to "keep it running."  LOGAN provided JONES further instructions to be passed on to additional known and unknown subjects. These instructions included directions on the use of specific telephone numbers and referenced narcotics supplies or U.S. Currency that had not been seized by law enforcement, as well as several storage locations, some of which had already been identified by investigators.  LOGAN also referenced a subject known only as "JET," whom he indicated had "switched the phones around." JONES asked "which phone?" LOGAN replied, "618-402," the first six digits of the telephone number that had previously been held by LOGAN and was the target of the original PLIs.  Based on this conversation and subsequent controlled

---

[2] Multiple previous FBI and SLCPD deals had been coordinated with LOGAN by contacting this number.  On January 21, 2021, a search warrant was issued for the Precision Location Information; Subscriber & Transactional Records Cell Site Information; Pen Register & Trap-and-Trace (PLI) for telephone number (618) 402-4851.

GOV-0000244

purchases, investigators believe that "JET" ported and then began operating cellular telephone number (618) 402-4851 to facilitate and distribute narcotics in the St. Louis area on behalf of LOGAN and his DTO.

**B.  March    2021 Controlled Purchase from "JET"**

13.     On the morning of March    2021, investigators met at a neutral staging location and were briefed on an upcoming controlled purchase from "JET" and/or other members of the LOGAN DTO.   Several units set up surveillance in the anticipated area for the deal location, Grand Blvd. and Delmar Blvd, within the Eastern District of Missouri.

14.     An SLCPD UD called "JET" on (618) 402-4851.  A male voice answered and directed the UD to "Grand and Delmar."   Prior to proceeding, the UD was outfitted with an electronic listening device to allow surveillance units to audibly monitor the controlled purchase. The UD was then provided with $100.00 of U.S. currency to be used in the purchase of the narcotics.

15.     The UD proceeded to the area of Grand Blvd. and Delmar Blvd. in an undercover vehicle (hereinafter UC vehicle) while under constant surveillance. Once the UD neared the area, he/she placed another call to "JET."   The same male voice answered, and the UD advised him he/she was in the area.  "JET" instructed the UD to park next to the Chop Suey located at 3336 Delmar Blvd.  The UD described the UC vehicle to "JET" during this conversation.

16.     The UD parked at the designated location.  Moments later, the UD observed a silver Toyota Camry, Illinois Fleet Plate 120774, turn onto Delmar Blvd. The Camry pulled next

GOV-0000245

to the UC vehicle and the driver motioned for the UD to follow him.  The UD followed the Camry to the parking lot of the apartment complex near N. Leonard and Franklin Ave. The Toyota turned around and pulled next to the driver's side of the UC vehicle. The driver opened the driver door and the UD handed over the buy money.  The driver handed the UD a clear plastic bag containing multiple light/dark green capsules containing a white powdery substance, believed to be fentanyl.  The UD left the deal location and proceeded back to the secure location while under constant surveillance.  The UD described the driver of the Toyota as a light skin black male with facial hair and corn rolls and was wearing a gray hooded sweater. Surveillance observed the Camry leave the area and drive to Chambers Park, near Franklin Avenue and N. Cardinal Avenue.  The clear plastic bag containing multiple light/dark green capsules containing a white powdery substance, believed to be fentanyl, was packaged as evidence at the SLCPD 7th precinct.  Based on training and experience and the instant investigation, the color and texture of the substance was consistent with fentanyl.

17.     Investigators subsequently interviewed a confidential informant ("CI#1") who was familiar with the LOGAN DTO.  After being showed a photograph of this individual, the CI#1 confirmed him to be a member of the DTO known as "JET."[3]

---

[3] CI#1 is assisting law enforcement in exchange for possible judicial consideration.  Investigators corroborated information provided by CI#1 through other investigative steps, and information provided by CI#1 matched what investigators already knew as a result of the ongoing investigation.  Information provided by CI#1 has been found to be reliable and investigators find him/her to be credible.

GOV-0000246

C.  **Additional PLI for (618) 402-4851 and Additional Surveillance**

18.      On March 12, 2021, an additional search warrant was issued for the precision

location information; Subscriber & Transactional Records Cell Site Information; Pen Register &

Trap-and-Trace (PLI) for telephone number (618) 402-4851, Cause No. 4:21 MJ 6048 PLC.

19.      Surveillance was conducted on Monday, March 22, 2021, after several days of

observation of the PLI data indicated that "JET" regularly spent the night at **Target Location 1**.

**Target Location 1** was already known to investigators because it was frequented by LOGAN

prior to his arrest.

20.      Between February to March, 2021, LOGAN had regularly proceeded from his

residence to **Target Location 1** during the early mornings, remained at **Target Location 1** for

15 to 20 minutes, and then proceeded to a house from which he conducted narcotics deals for the

rest of the day.  At the end of the day, LOGAN would proceed to **Target Location 1** before

returning to his residence.  In addition to this regular pattern, LOGAN had made at least one

inquiry regarding the condition of "Cass" in a recorded jail call conversation with JONES after

his arrest.  Agents and TFOs believed this to be in reference to **Target Location 1**, based on

LOGAN's regular movements and the position of **Target Location 1** at the intersection of N.

20th Street and Cass Avenue.  Investigators believe that LOGAN's ongoing concerns suggested

that his associates continued to use **Target Location 1** after LOGAN's arrest.

21.      Prior to the initiation of the March 22, 2021 surveillance, PLI data placed the

phone near the area of **Target Location 1**. Surveillance units observed a black Chevrolet

8

GOV-0000247

Malibu, Illinois Fleet Plate 112188, parked in front of **Target Location 1**.  Moments later, surveillance observed a black male, identified as "JET," exit the **Target Location 1** front door and enter the Malibu. After this vehicle left the area, the PLI phone location changed in a manner consistent with the vehicle's movement.

22.     A utilities check for **Target Location 1** indicated that they were in the name of Nicole WILSON, which had been active since January of 2021.  LOGAN and members of his DTO were known to use girlfriends to lease or rent apartments for storage and distribution of illegal narcotics.  Investigators believe LOGAN and associates used this method to mask their identity.

### D. **March      2021 Controlled Purchase**

23.     On the morning of March      2021, investigators met at a neutral staging location and were briefed for a controlled purchase from "JET" and/or other members of the LOGAN DTO.   Several units set up surveillance near **Target Location 1**. Surveillance observed the same black Chevrolet Malibu parked on the street in front of **Target Location 1**.

24.     After the briefing, the UD placed a telephone call to "JET" on (618) 402-4851. "JET" answered and directed the UD to "go to Grand and Delmar."  Prior to responding to the location, the UD was outfitted with an electronic listening device.  The UD was provided with $100.00 of U.S. Currency to be used in the purchase of the narcotics.

25.     The UD proceeded to the area of Grand Blvd. and Delmar Blvd. under constant surveillance.  Upon arrival, the UD called "JET," who directed the UD to the Chop Suey

9

restaurant on Delmar.  After a series of phone calls, the UD was directed to the parking lot of the apartment complex near N. Leonard and Franklin Avenues, the same location where previous narcotics transaction occurred.

26.     A short time later, surveillance observed "JET" exit **Target Location 1** and enter the black Chevrolet Malibu. The black Malibu left the area and drove to the deal location.  The UD received a phone call from "JET" asking exactly which parking lot the UD was parked in.

27.     Moments later, the UD observed the black Malibu back into a parking spot and motion for the UD to pull closer.  The UD approached the driver's side of the black Malibu and observed the driver to be the same individual previously identified as "JET."  The UD handed "JET" the $100 in buy money in exchange for a clear plastic bag containing multiple blue/red/pink/clear capsules containing investigators believe to be fentanyl, based on training, experience, and the instant investigation.  The UD departed the area and proceeded to the secure location while under constant surveillance.  Surveillance observed the black Chevrolet Malibu drive back to **Target Location 1** and park. Moments later, "JET" exited the vehicle and entered **Target Location 1**.  PLI data was consistent with "JET's" pattern of movement observed by the physical surveillance.

### E.  Subsequent Surveillance and April      2021 Controlled Purchase

28.     Over the next several weeks, surveillance and PLI data established that "JET" maintained a pattern similar to LOGAN's movements prior to his arrest.  "JET" also utilized some of the same locations as LOGAN, including **Target Location 1**.  Investigators spoke with

GOV-0000249

multiple sources familiar with the LOGAN DTO, who confirmed that based on their observations and knowledge, members of the LOGAN DTO would use several different locations to store narcotics and proceeds from narcotics sales.  These sources also indicated that LOGAN had 'taught' associates within the DTO how to operate, so TFOs and Agents should expect considerable similarity.[4]

29.     Prior to his arrest, LOGAN had regularly visited **Target Location 1** during the early morning hours later in the evenings, before and after selling fentanyl from 10748 Hallwood Dr.  LOGAN essentially used the Hallwood address as a "base" from which he arranged and completed multiple deals throughout the day.[5]  After LOGAN's arrest, "JET" was observed operating in a similar pattern, in which he stayed nights at **Target Location 1** and used 6409 Wellsmar Avenue as his "base."

---

[4] Sources included FBI CHS S-103529.  This source has consistently provided reliable information regarding multiple federal cases, which has regularly been verified based on observations and other investigative methods. CHS information was substantially corroborated by an interview of subject                 who was arrested on          2021 in connection with another case and interviewed shortly thereafter.               was identified as a member of the LOGAN DTO.  A firearm,                          several cellular telephones, and multiple ounces of capped fentanyl were seized during his arrest.                 admitted contacts with subject Marcayla JONES, "JET" and other subjects known to investigators, and provided information on the LOGAN DTO. Finally, CI#1 described above provided additional corroboration for this information regarding the methods of the LOGAN DTO.

[5] Just prior to the Federal investigation into the LOGAN DTO, DEA St. Louis obtained information from an interview with                          who confirmed LOGAN's pattern of storing                         while maintaining a separate location for narcotics storage and distribution.

GOV-0000250

30.     On the afternoon of April      2021, investigators conducted an additional controlled purchase from "JET."  This operation was conducted in the same manner as prior controlled purchases, but surveillance located "JET" at 6409 Wellsmar Avenue prior to placing a phone call to him. The UD called "JET" to arrange the deal, and "JET" told UD to call back on a different number.   After this call, "JET" was observed proceeding from Wellsmar to an agreed upon deal location.  On arrival, "JET" met the UD and completed a $100 deal with the UD for a clear plastic bag containing multiple light blue/clear capsules containing a white powdery substance believed to be fentanyl based on training and experience.   During the operation, PLI phone data was consistent with pattern of movement observed by the physical surveillance. Surveillance conducted on "JET" later that same day revealed that he moved between **Target Location 1** and 6409 Wellsmar Avenue multiple times during the rest of day.

**F.   Additional PLI Data; Identification of Target Locations 2 & 3.**

31.     On May 3, 2021, search warrants were issued for the precision location information; subscriber & Transactional Records Cell Site Information; Pen Register & Trap-and-Trace (PLI) for telephone numbers (618) 402-4851 and (618) 210-3416 (Cause Nos. 4:21 MJ 1161 JMN; 4:21 MJ 1160 JMB). These cell phones are believed to be utilized by "JET" and/or other members of the DTO, as UD spoke to "JET" on both phones.

32.     The updated PLI data showed that "JET" was most likely no longer utilizing 6409 Wellsmar as a stash house. However, data regularly placed "JET" in the area of 8450 Gast Place, near apartment number 286.  "JET" would remain in the area of Chambers Park in St. Louis City

12

GOV-0000251

during the day and move to Gast Place later in the evenings before ending the night at **Target Location 1**.  Based on this data, it is believed "JET" stopped using the Wellsmar address at some point during mid-April and moved operations to 8450 Gast Place apartment numbers 286 and 288 (described below as **Target Location 2** and **Target Location 3**, respectively).  The Gast address appeared to serve as a similar "base" that "JET" used during the day, proceeding there from **Target Location 1** in the morning and returning there most evenings.

### G. <u>May</u>     <u>2021 Controlled Purchase and Use of Target Locations 1, 2 & 3.</u>

33.    On the morning of May    2021, investigators met at a neutral staging location and were briefed for an upcoming controlled purchase from "JET" and/or other members of the LOGAN DTO.   Several units set up surveillance near **Target Location 1**.  The UD called "JET" on (618) 210-3416.  "JET" directed the UD to proceed to Grand and Delmar.  A short time after the call, surveillance observed a black Mercedes sedan leaving the area of **Target Location 1**.

34.    The UD was outfitted with an electronic listening device and provided with $80.00 of U.S. Currency to be used in the purchase.  The UD departed for the area of Grand and Delmar while under constant surveillance.   Once the UD neared the area, he/she placed a call to "JET."  "JET" told UD to proceed to the Church's Chicken off of Grand Ave.  UD proceeded to this location and parked in the parking lot.  The UD then called "JET" and told him he/she was on the parking lot.

35.    Moments later, surveillance observed the black Mercedes sedan, MO Temporary license plate 05GUKK, pull on to the lot.  The UD called "JET" and provided a description of

GOV-0000252

his/her vehicle.  "JET," driving the Mercedes, made contact with the UD, opened his (JET's")

door, and provided the UD a clear plastic bag containing multiple pink/blue/red/white capsules

containing a white powdery substance believed to be fentanyl in exchange for the buy money.

The UD departed the area for a secure location, followed by surveillance units.  On arrival,

SLCPD TFOs seized the drug evidence.

      36.    Units maintained surveillance on the black Mercedes sedan after the controlled

purchase was completed and the UD departed the deal location area. "JET" proceeded to drive

around the area of Chambers Park and did so for approximately 40 minutes before returning to

the Church's Chicken parking lot to conduct another hand-to-hand transaction, which

surveillance units visually observed.  During this time, JET did not enter any houses or

businesses; he remained either in his vehicle or outside near the vehicle.

      37.    After the second transaction at the Church's Chicken lot, "JET" departed for the

area of Josephine Baker Blvd and Delmar Blvd, a known deal location used by "JET" during

prior controlled purchases.  Surveillance observed "JET" conduct another hand-to-hand

transaction at this location.  After leaving the area of Chambers Park, "JET" drove directly to the

Badenhaus Apartments, located at 8450 Gast Place.  Once the Mercedes entered the complex and

stopped, a blue sedan stopped in the roadway and the front passenger approached the black

Mercedes. After a brief conversation and a hand-to-hand transaction, "JET" pulled away.  After

circling back through the apartment complex, "JET" backed the Mercedes into a parking spot in

front of 8450 Gast Place apartment number 286 (hereinafter referred to as "**Target Location 2**").

14

"JET" exited the front seat of the black Mercedes carrying a satchel. He walked up the steps and entered apartment number 288 (hereinafter referred to as "**Target Location 3**"). A short time later he exited **Target Location 3**, locked the door with a key, and used a key to enter apartment 286 (**Target Location 2**). "JET" then exited **Target Location 2**, unlocked apartment 288 (**Target Location 3**) and again entered the apartment. Moments later, "JET" exited **Target Location 3** with a chair and again entered **Target Location 2**. "JET" remained at this location and surveillance was terminated.

38.     A record check of the black Mercedes sedan revealed it was registered to Nicole Wilson at 1304 N. 9th Street. Investigators noted that this same individual is listed as having active utilities at 1505 N. 20th Street (**Target Location 1**).

## BACKGROUND AND TRAINING

39.     As part of my experience and training as a Detective and that of other special federal officers, special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime. I and other members of the investigating team have extensive experience interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing and concealing of proceeds of narcotics trafficking. Based upon the experience of myself and the investigating team and our participation in other pending and completed controlled substance and/or financial investigations of ongoing, extensive narcotics

GOV-0000254

distribution conspiracies involving large amounts of controlled substances and money, I know the following:

a. It is common for drug dealers to secret contraband, proceeds of drug sales, and records of drug transactions in their residence or other buildings under their control.

b. Drug traffickers frequently keep near at hand, in their residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs. These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c. Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients. The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

d. Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and / or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers

16

GOV-0000255

reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with persons known to traffic in controlled substances or to facilitate such traffic.  These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

e.  Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product.  These traffickers frequently maintain these photographs in their residence or other buildings under their control.

f.  Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g.  When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits.  I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business

17

GOV-0000256

fronts.   They maintain record of these transactions in their residence or other buildings under their control.

h.   Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

i.   Drug traffickers frequently possess firearms and / or other weapons in their residence or other buildings under their control to protect their narcotics supplies and/or United States currency.

j.   Drug traffickers frequently possess safes and / or other storage devices, security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment in their residence or other buildings under their control to protect their narcotics supplies and / or United States currency.

k.   It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for its distribution elsewhere in the United States.   After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs.   The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers. Records of their travel are frequently kept in their residence or other buildings under their control.

18

GOV-0000257

## CONCLUSION

40.     Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search **Target Location 3**, described in Attachment A, and seize the items described in Attachment B.

41.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation. .

Respectfully submitted,

Christopher Douglas
Task Force Officer
FBI

**Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41** this _14th_ day of May, 2021.

The Honorable Nannette A. Baker
UNITED STATES MAGISTRATE JUDGE

19

GOV-0000258

## ATTACHMENT A

*Property to be searched*

The location to be searched is: **8450 Gast Place Apartment #288, St. Louis, MO 63147** (hereinafter **"Target Location 3"**), described as a two story multi-family apartment building comprised of red brick, gray siding, white trim, a gray roof, and a green-colored front door.  The numbers "288" are white in color and affixed to a green placard to the right of the front door. This residence is located on the north side of Gast Place Street facing south.



GOV-0000259

**ATTACHMENT B**

*Property to be seized*

1.      All records and information relating violations of Title 21, United States Code, Sections 841(a)(1) and 846 that constitute fruits, evidence and instrumentalities of those violations involving "JET" and others known and unknown, including:

   a.  Controlled substances;

   b.  Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

   c.  Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

   d.  Cellular telephones, telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

   e.  United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of heroin or which are proceeds from the distribution of heroin;

2

GOV-0000260

f.  Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

g.  Papers, tickets, notes, schedules, receipts and other items relating to travel or transportation;

h.  Indicia of occupancy, residency, rental and/or ownership of the vehicles and/o premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

i.  Firearms and/or weapons; and

j.  Security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment.

GOV-0000261

AO 93 (Rev. 11/13)    Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

<div style="border:1px solid red">

**FILED**

MAY 14 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

</div>

In the Matter of the Search of          )
*(Briefly describe the property to be searched*          )
*or identify the person by name and address)*          )
          )          Case No. 4:21 MJ 5151 NAB
THE PREMISES LOCATED AT: **8450 Gast**          )
**Place Apartment #288, ST. LOUIS, MO 63147**          )          SIGNED AND SUBMITTED TO THE COURT
**("Target Location 3"),** further described in          )          FOR FILING BY RELIABLE ELECTRONIC MEANS
Attachment A.          )

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____EASTERN_____ District of _____MISSOURI_____ *(identify the person or describe the property to be searched and give its location)*:

THE PREMISES LOCATED AT: **8450 Gast Place Apartment #288, ST. LOUIS, MO 63147 ("Target Location 3"),** further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before _____May 27, 2021_____ *(not to exceed 14 days)*
✓ in the daytime 6:00 a.m. to 10:00 p.m.   ❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _Nannette A. Baker_____.
*(United States Magistrate Judge)*

❑   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Date and Time issued:   May 14, 2021 at 10:23AM

*Judge's signature*

City and State:   _____St. Louis, MO_____

Honorable Nannette A. Baker, U.S. Magistrate Judge
*Printed name and title*

**GOV-0000262**

AO 93 (Rev. 11/13) Search and Seizure Warrant (page 2)

## Return

| Case No.:<br>4:21 MJ 5151 NAB | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

GOV-0000263

## ATTACHMENT A

*Property to be searched*

The location to be searched is: **8450 Gast Place Apartment #288, St. Louis, MO 63147** (hereinafter **"Target Location 3"**), described as a two story multi-family apartment building comprised of red brick, gray siding, white trim, a gray roof, and a green-colored front door.  The numbers "288" are white in color and affixed to a green placard to the right of the front door. This residence is located on the north side of Gast Place Street facing south.



**ATTACHMENT B**

*Property to be seized*

1.     All records and information relating violations of Title 21, United States Code, Sections 841(a)(1) and 846 that constitute fruits, evidence and instrumentalities of those violations involving "JET" and others known and unknown, including:

  a.  Controlled substances;

  b.  Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

  c.  Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

  d.  Cellular telephones, telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

  e.  United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of heroin or which are proceeds from the distribution of heroin;

2

f.  Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

g.  Papers, tickets, notes, schedules, receipts and other items relating to travel or transportation;

h.  Indicia of occupancy, residency, rental and/or ownership of the vehicles and/o premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

i.  Firearms and/or weapons; and

j.  Security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment.

GOV-0000266

**FILED**

__MAY 14 2021__

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | No. 4:21 MJ 5151 NAB |
| | ) | |
| THE PREMISES LOCATED AT: **8450 Gast** | ) | **FILED UNDER SEAL** |
| **Place Apartment #288, ST. LOUIS, MO 63147** | ) | SIGNED AND SUBMITTED TO THE |
| **("Target Location 3"),** further described in | ) | COURT FOR FILING BY RELIABLE |
| Attachment A. | ) | ELECTRONIC MEANS |

## MOTION FOR SEALING ORDER

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Geoffrey S. Ogden, Assistant United States Attorney for said District, and moves this Court for an order directing that the search warrant, along with its application, affidavit, and return, entered by this Court be sealed until November 14, 2021, except for the limited purposes of providing same to defense counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

In support of this Motion, the Government provides the following facts, establishing that (a) the government has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical:

Because this investigation is ongoing and its success would be jeopardized if the contents of the affidavit were made public, the Government requests that the affidavit and the accompanying search-warrant documents be sealed for the stated period of time.

GOV-0000267

WHEREFORE, for the reasons stated above, the Government respectfully requests that the

search warrant, along with its application, affidavit, and return, be sealed until November 14, 2021.

Dated this ___14th___ day of May, 2021.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/ Geoffrey S. Ogden*
GEOFFREY S. OGDEN, #66930MO
Assistant United States Attorney

GOV-0000268

**FILED**

MAY 14 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | No. 4:21 MJ 5151 NAB |
| | ) | |
| THE PREMISES LOCATED AT: **8450 Gast Place Apartment #288, ST. LOUIS, MO 63147 ("Target Location 3"),** further described in Attachment A. | ) ) ) ) ) | **FILED UNDER SEAL**  SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

## ORDER

On motion of the United States of America, IT IS HEREBY ORDERED that the search warrant, along with its application, affidavit, and return, and this Order issued thereto, be sealed until November 14, 2021, except for the limited purposes of providing same to defendant counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

This Order is based upon the sealed motion of the Government establishing that: (a) the government has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical.

NANNETTE A. BAKER
United States Magistrate Judge

Dated this ___14th___ day of May, 2021.

GOV-0000269